UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re L.G. PHILIPS LCD CO., LTD. SECURITIES LITIGATION | : : : | Civil Action No. 1:07-cv-00909-RJS <br> <u>CLASS ACTION</u> |
| This Document Relates To: <br>     ALL ACTIONS. | : : : : | |

OBJECTIONS OF ORLOFF FAM TR UAD 12/13/01MARSHALL J ORLOFF & ANN S. ORLOFF TTEES AND NOTICE OF INTENT TO APPEAR

**TABLE OF CONTENTS**

I. IDENTIFICATION OF OBJECTOR ............................................................................. 1

II. THE COURT MUST ACT AS FIDUCIARY ............................................................. 1

III. THE COURT MAY UTILIZE EITHER THE LODESTAR OR PERCENTAGE
OF THE FUND METHOD ARGUMENT ................................................................. 3

IV. IF THE COURT CHOOSES TO UTILIZE THE PERCENTAGE OF THE
FUND METHOD, THE GOLDBERGER FACTORS INDICATE 30 PERCENT
IS NOT REASONABLE .............................................................................................. 3

V. REGARDLESS OF THE METHOD UTILIZED TO CALCULATE FEES,
THIS COURT SHOULD CONDUCT A THOROUGH LODESTAR
CROSS-CHECK .......................................................................................................... 8

    A. Lead Counsel's Fee Request Lacks Support as they Have Failed to
       Provide Billing Records ................................................................................... 9
    B. The Hourly Rate Requested Appears to be Unreasonable ............................ 10

VI. OBJECTORS' ADDED VALUE TO THE CLASS ................................................ 11

VII. JOINDER IN OTHER OBJECTIONS ..................................................................... 13

VIII. REQUEST FOR ATTORNEYS' FEES .................................................................... 13

IX. CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany
(2d Cir. 2008) 522 F.3d 182 ……………………………………........................ 9, 10

Bowling v. Pfizer, Inc.
922 F.Supp. 1261, 1285 (S.D. Ohio), aff'd, 102 F.3d 777 (6th Cir. 1996) ………................ 12

County of Suffolk v. Long Island Lighting Co.
907 F.2d 1295, 1325-27 (2d Cir. 1990) ……………………….............................13

City of Detroit v. Grinnell Corporation (Grinnell I)
495 F.2d 448, 469 (2d Cir.1974) ………………………………………........................ 4

City of Detroit v. Grinnell Corp. (Grinnell II)
560 F.2d 1093, 1099 (2d Cir.1977) ……………………………………............... 2, 3, 4, 6

Frankenstein v. McCrory Corp.
425 F.Supp. 762, 767 (S.D.N.Y. 1977) ……………………………….............................13

Goldberger v. Integrated Resources, Inc.
(2d. Cir. 2000) 209 F.3d 43, 50.) ……………………………………….......... 2, 3, 4, 6-10

Grant v. Bethlehem Steel Corp.
823 F.2d 20, 22 (2d Cir.1987) …………………………………………........................ 2

Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers
L.L.P., 212 F.R.D. 400, 412 (E.D. Wis. 2002) …………………………….............................12

Grunin v. International House of Pancakes
513 F.2d 114, 123 (8th Cir.) ………………………………………….......................... 1

Howes v. Atkins
668 F.Supp. 1021, 1027 (E.D.Ky. 1987) ……………………………….............................13

In re Agent Orange Product Liability Litigation
(2d Cir. 1987) 818 F.2d 226 …………………………………………........................ 6, 7

In re "Agent Orange" Product Liability Litigation
996 F.2d 1425, 1438 (2d Cir.1993) ……………………………………............................. 2

In re Bristol-Meyers Squibb Securities Litigation
(S.D.N.Y.2005) 361 F.Supp.2d 229 …………………………………………........................ 8

In re Cendant Corp. Litig.

264 F.3d 201 (3d Cir. 2001) ………………………………………….............................. 8

In re Domestic Air Transp. Antitrust Litig.

148 F.R.D. 257, 359-60 (N.D.Ga. 1993) …………………………….............................13

In re KeySpan Corp. Securities Litigation

2005 WL 3093399, Fed. Sec. L. Rep. P 93,534 (E.D.N.Y. Sep 30, 2005) ……...................... 3

In re NASDAO Market-Makers Antitrust Litigation

(S.D.N.Y.1998) 187 F.R.D. 465 ……………………………………............................... 8

In re PaineWebber Ltd. Partnerships Litigation

171 F.R.D. 104, 126 (S.D.N.Y.1997), aff'd, 117 F.3d 721 (2d Cir.1997) …......................... 4

Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.

(2d. Cir. 1973) 487 F.2d 161 …………………………………………............................ 7

Matter of Continental Illinois Securities Litigation

 (7th Cir. 1992) 962 F.2d 566, 572 ……………………………………........................ 2, 3

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air

478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) …………….............................. 3

Viscainzo v. Microsoft Corp.

(9th Cir. 2002.) 290 F. 3d 1043, 1050 ……………………………………………….. 8

Walsh v. Great Atlantic & Pacific Tea Co.

726 F.2d 956, 964 (3d Cir.1983) …………………………………………........................ 2

Weinberger v. Great N. Nekoosa Corp.

925 F.2d 518, 524 ……………………………………………………............................. 2

## STATUTES

*Federal Rules of Civil Procedure, Rule 23(h), 2003* …………………………………… 2, 13

Private Securities Litigation Reform Act of 1995
      H.R.Rep. No. 104-369 (1995) *passim, reprinted in* 1995 U.S.C.C.A.N. 730 ……..…3

## TREATISES

The Manual For Complex Litigation (Fourth) 14.122 (2004) …………………………….. 8

Attorney Fee Awards §§ 2.09, 2.33 and 2.34 (2d ed.1993 and Nov. 2001 Supp.)
      Alba Conte   ……………………………………………….............................. 7

The Manual For Complex Litigation (Third) 24.122 (1995)   ……………………….. 8

# OTHER AUTHORITY

*The Unfaithful Champion: The Plaintiff as Monitor in Shareholder Litigation*
48 Law & Contemp. Probs. 5, 26-33 (1985) John C. Coffee, Jr. ………………………..…2

*Empirical Study of Class Action in Four Federal District Courts* 76
(1996) Federal Judicial Center   ……………………………………………………....…3

*Paying Lawyers, Empowering Prosecutors, and Protecting Managers: Raising the Cost of Capital in America,* 42 Duke L.J. 945, 984 (1993) Ralph K. Winter   ………………...… 3

Comes now, Objector, Orloff Fam Tr UAD 12/13/01Marshall J Orloff & Ann S. Orloff TTEES, to file these objections to the proposed settlement and state his intent to appear through his attorney at the fairness hearing on March 17, 2011.

## I. IDENTIFICATION OF OBJECTOR

Objector Orloff Fam Tr UAD 12/13/01Marshall J Orloff & Ann S. Orloff TTEES is a member of the settlement class in the *In re L.G.Philips LCD Co., Ltd. Securities Litigation*, Civil Action No. 07-CV-909. Objector's current address is in San Diego County, State of California. Dr. Orloff's address can be obtained through counsel. Objector purchased securities of LG Display securities during the period from July 16, 2004 through December 11, 2006. The type of L.G.Philips security purchased, the number of LG Display ADSs, common shares and/or notes purchased, acquired and/or sold and the dates of each purchase, acquisition or sale. Objector is represented by attorney, Forrest S. Turkish.

Objector herein objects to Co-Lead Counsel's Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Costs (hereinafter, "Motion for Fees"), on the bases more fully delineated below.

## II. THE COURT MUST ACT AS FIDUCIARY

Federal courts favor settlements of class actions; however, a fairness hearing is required to allow all interested parties to be heard and all relevant information adduced so that the court is able to rule intelligently on whether a proposed resolution is fair, reasonable and adequate. *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir.) (the district court "act[s] as a fiduciary who must serve as a guardian of the rights of absent class members"), cert. denied, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93

1

(1975), quoted in *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1099 (2d Cir.1977) (Grinnell II" ).

> **"Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility."**
> *Committee Notes to Rule 23(h), 2003.*

The ultimate responsibility to ensure that the interests of class members are not subordinated to the interests of either the class representatives or class counsel rests with the district court. See, e.g., *In re "Agent Orange" Product Liability Litigation*, 996 F.2d 1425, 1438 (2d Cir.1993) ("A judge in a class action is obligated to protect the interests of absent class members."), cert. denied, 510 U.S. 1140, 114 S.Ct. 1125, 127 L.Ed.2d 434 (1994); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir.1987) ("In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately.' "); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 964 (3d Cir.1983) ("The court [i]s required to ... consider whether class counsel provided fair and adequate representation to the class as a whole.").[1]

---

[1] Indeed, the *Goldberger* decision, cited by Lead Counsel in their Motion for Fees, is clear in this matter that fee requests are subject to scrutiny by the Court. In that decision, the Court stated: "We appreciate that fixing a reasonable fee becomes even more difficult because the adversary system is typically diluted-indeed, suspended-during fee proceedings. Defendants, once the settlement amount has been agreed to, have little interest in how it is distributed and thus no incentive to oppose the fee. *See Matter of Continental Illinois Securities Litigation* (7th Cir. 1992) 962 F.2d 566, 572. Indeed, the same dynamic creates incentives for collusion-the temptation for the lawyers to agree to a less than optimal settlement "in exchange for red-carpet treatment on fees." *Weinberger v. Great N. Nekoosa Corp.,* 925 F.2d 518, 524 (1st Cir.1991) (citing John C. Coffee, Jr. *The Unfaithful Champion: The Plaintiff as Monitor in Shareholder Litigation,* 48 Law & Contemp. Probs. 5, 26-33 (1985)). And the class members-the intended beneficiaries of the suit-rarely

### III. THE COURT MAY UTILIZE EITHER THE LODESTAR OR PERCENTAGE OF THE FUND METHOD.

In this Circuit, either the lodestar and percentage methods are available in calculating reasonable attorneys' fees in class action settlements. *In re KeySpan Corp. Securities Litigation*, 2005 WL 3093399, Fed. Sec. L. Rep. P 93,534 (E.D.N.Y. Sep 30, 2005) (citing *Goldberger v. Integrated Resources, Inc.* (2d. Cir. 2000) 209 F.3d 43, 50.) Courts using the lodestar method multiply the number of hours reasonably expended by a reasonable hourly rate for attorneys of similar skill. See *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Alternatively, the percentage of the fund method awards Class Counsel a percentage of the total value of the common fund awarded to the Class, pursuant to the District Court's approval of the requested percentage. Whichever method is utilized, the touchstone of the calculation is reasonableness. See Generally, *Goldberger* 209 F.3d at 47.

### IV. IF THE COURT CHOOSES TO UTILIZE THE PERCENTAGE OF THE FUND METHOD, THE GOLDBERGER FACTORS INDICATE 30 PERCENT IS NOT REASONABLE.

The Second Circuit utilizes a five-point assessment of reasonableness in determining the fee percentage in common fund cases; (1) the time and labor expended

---

object. *See* Federal Judicial Center, *Empirical Study of Class Action in Four Federal District Courts* 76 (1996). Why should they? They have no real incentive to mount a challenge that would result in only a "minuscule" *pro rata* gain from a fee reduction. *Continental Illinois,* 962 F.2d at 573. It is not without significance that when Mr. Weiss, lead counsel on this appeal, stood up at oral argument to petition for a bigger slice of his clients' recovery, no one sat adjacent to him at opposing counsel's table.

All these considerations have fed the perception among both commentators and the Congress that plaintiffs in common fund cases are mere "figureheads," and that the real reason for bringing such actions is "the quest for attorney's fees." Ralph K. Winter. *Paying Lawyers, Empowering Prosecutors, and Protecting Managers: Raising the Cost of Capital in America,* 42 Duke L.J. 945, 984 (1993); *see* Private Securities Litigation Reform Act of 1995, H.R.Rep. No. 104-369 (1995) *passim, reprinted in* 1995 U.S.C.C.A.N. 730, *passim* (criticizing abusive lawyer-driven securities class actions). This is why we continue to approach fee awards "with an eye to moderation." *Grinnell II,* 560 F.2d at 1099 (quoting *Grinnell I,* 495 F.2d at 470). *Goldberger v. Integrated Resources, Inc.* (2d Cir. 2000) 209 F.3d 43, 52-3.

by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger* 209 F. 3d at 50. (Citing *City of Detroit v. Grinnell Corporation* (Grinnell I), 495 F.2d 448, 469 (2d Cir.1974), and *Grinnell II*, 560 F.2d 1093 (2nd Cir.1977). Overlaying the facts of this case with the foregoing *Goldberger* analysis, a 30 percent as a fee award appears to be excessive.

**First, the time and labor** expended by counsel was not excessive. Although the litigation has spanned four years, no formal discovery was conducted[2], only two dispositive motions were filed and a settlement was reached in June 2010, functionally making this lawsuit only a 3.5-year endeavor. (See Memorandum of Law in Support of Motion for Final Approval of Settlement and Plan of Allocation, p. 12. Doc. 68.)[3] During this 3.5 year litigation time span, only approximately 4,000 attorney hours were spent in litigating this case, among many attorneys. Compared to many other class actions of a similar nature, this length of time is fairly average.

**Second**, with respect to the **complexity of this case**, although this Objector certainly acknowledges the sophisticated nature of securities fraud class actions (and this one is no exception), the relative level of complexity inherent in this case was hedged by the investigation into the Defendant Company by the Department of Justice. ("DOJ") As this Court is aware, the DOJ, along with several other foreign regulatory agencies, commenced investigations into L.G.Phillips and other LCD companies in 2006 in an effort to root out a perceived price-fixing scheme, which was estimated to have spanned

---

[2] "The stage of the proceedings and the amount of discovery completed are important factors to consider in order to ensure that plaintiffs have had access to material to evaluate their case and assess the adequacy of any settlement proposal." *In re PaineWebber Ltd. Partnerships Litigation,* 171 F.R.D. 104, 126 (S.D.N.Y.1997), *aff'd,* 117 F.3d 721 (2d Cir.1997).
[3] Hereinafter, "Motion for Final Settlement."

4

from 2001 onward. Class Counsel was acutely aware of this investigation and the benefit this would add to its class action allegations. In fact, the Consolidated Class Action Complaint, filed on August 7, 2008, states,"[o]n December 11, 2006 (the following Monday), L.G.Philips issued a press release formally announcing that it was being investigated for "possible anticompetitive conduct in the LCD industry." Specifically, the press release reported, in part:

> Last Friday, as part of an investigation of possible anticompetitive conduct in the LCD industry, officials from the Korean Fair Trade Commission (KFTC) visited the offices of L.G.Philips LCD in Seoul, Korea. In addition, the Japanese Fair Trade Commission (JFTC) issued a notice to our offices in Tokyo, Japan and the United States Department of Justice (DOJ) issued a subpoena to our offices in San Jose, California." Complaint[4] ¶ 82.

The Complaint further states that this investigation, and the resulting press release, was a clear indication that " the Company's strong performance over the past several years was not the result of its unique abilities, but rather its deceptive scheme and course of conduct to fix prices and control industry supply and demand." Complaint ¶ 83.[5]

Although this information most assuredly did not ensure that Plaintiffs were assured a win in this case, it admittedly added a measure of confidence in pursuing these claims that their claims were meritorious and, thus, incentivize Defendants to settle the matter relatively quickly.

---

[4] Hereinafter, all references to "Complaint" shall refer to the Consolidated Class Action Complaint, filed on August 7, 2008. (Doc. 20.)

[5] In fact, Duk Mo Koo, a former executive at L.G.Philips, was indicted as a result of this very DOJ investigation. The indictment was publicly filed on February 4, 2009. (Website found at http://www.justice.gov/atr/cases/f243500/243520.htm, on March 1, 2011.)

**Third, the risk of no recovery,** as a result of the investigation by the DOJ was not significant. The Second Circuit has historically considered the risk of success as "perhaps the foremost" factor to be considered in determining whether to award an enhancement. *In re Agent Orange Product Liability Litigation*, (2d Cir. 1987) 818 F.2d 226, 236 (quoting *Grinnell I*, 495 F.2d at 471).

Although certainly there is an attendant risk in any litigation, this was not a case that posed unusual or new questions of law or fact. The Defendants' Motion to Dismiss posed the usual sort of defenses to Class claims – failure to allege a material misrepresentation, scienter, loss causation, fraud, failure to state a claim, and lack of personal jurisdiction over the individual defendants. (Doc. 35.) These arguments are of the routine sort normally presented by Defendants in these matters. And, one can only assume that Defendants were aware that the arguments in their motion fell flat, as they settled with Plaintiffs prior to oral argument for same. (Doc. 54.)

Also, importantly, Plaintiffs were afforded the added safeguard of the DOJ's (and other foreign regulatory agencies') investigation, and eventual indictment issuance, in support of its claims. It is commonly noted that an investigation by a regulatory agency into a corporation's purported improper or illegal activities reduces the risk factor in bringing an action against that corporation. Notably, the *Goldberger* Court stated that the "[d]istrict court did not abuse its discretion, in awarding attorney fees following settlement of securities class action, in declining to apply multiplier to lodestar to reflect assessment of risk, reasoning that counsel had benefitted from information generated by various parallel federal investigations, that there was no groundbreaking issue which

loomed significant and that likelihood of non-payment was slim." *Goldberger* 209 F.3d at 53-4.

**Fourth, the quality of the representation** was probably adequate, however, this Objector has no knowledge of how Class Counsel spent their attorney hours and to what end, as they have provided no billing records for review.

**Fifth,** and finally, **public policy considerations** indicate that this fee should not receive such a significant enhancement from Counsels' lodestar calculation. Certainly, Counsel is entitled to fair and reasonable fees for their work on this matter. This Objector does not attempt to argue otherwise. However, public policy favors the granting of ***reasonable*** fees, based on the circumstances of each case. This Circuit has opined that these circumstances are often based upon the attendant risk of the litigation and other factors. ("For example, we have held that public policy considerations justified the award of no contingency allowance in a case that was risky simply because it was of "highly questionable merit." *In re Agent Orange Product Liability Litigation*, (2d Cir. 1987) 818 F.2d 226, 235-36. Similarly, there are cases where the risk is "so slight" that any enhancement for the contingent nature of the fee must be "minimal." *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.* (2d. Cir. 1973) 487 F.2d 161, 168; see *Agent Orange*, 818 F.2d at 236 ("As the chance of success on the merits or by settlement increases, the justification for using a risk multiplier decreases."). *Goldberger* 209 F.3d at 54.)

Thus, in this instance, this Objector contends that the percentage requested by Co-Lead Counsel is too high given the specific facts of this particular case.[6]

---

[6] *See also* ALBA CONTE, ATTORNEY FEE AWARDS §§ 2.09, 2.33 and 2.34 (2d ed.1993 and Nov. 2001 Supp.) (surveying common fund settlements of $25-200 million and finding a range of 1-30%, with

## V. REGARDLESS OF THE METHOD UTILIZED TO CALCULATE FEES, THIS COURT SHOULD CONDUCT A THOROUGH LODESTAR CROSS-CHECK.

In the Second Circuit, whether the court utilizes the lodestar or percentage method, courts ordinarily "cross-check" the fee request by applying the lodestar methodology in order to determine its reasonableness. See *Goldberger*, 209 F.3d at 50. "Courts typically…utilize the lodestar method to confirm that the percentage amount does not award counsel an exorbitant hourly rate." *In re Bristol-Meyers Squibb Securities Litigation* (S.D.N.Y.2005) 361 F.Supp.2d 229, 233 (citing *In re NASDAO Market-Makers Antitrust Litigation* (S.D.N.Y.1998) 187 F.R.D. 465, 486, 489 n. 24 (internal citations omitted)).

The practice of utilizing a cross-check method has gained such popularity in recent years that, in 2000, the Third Circuit altered its previously staunch position against any utilization of the lodestar method (as stated in its 1985 Task Force opinion) to state that "[traditionally, the 'appropriate' percentage [fee award] is ... subjected to a cross-check." *In re Cendant Corp. sec. Litig.*, 109 F. Supp. 2d 285, 302 (D.N.J. 2000), vacated and remanded by *In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001). This cross check practice has even been canonized in the Manual for Complex Litigation (Fourth). MANUAL FOR COMPLEX LITIGATION (FOURTH) 14.122 (2004) ("The lodestar is at least useful as a cross-check on the percentage method by estimating the number of hours spent on the litigation and the hourly rate...") The Manual For Complex Litigation (Third) discusses lodestar fee awards with no mention of the cross-check. THE MANUAL FOR COMPLEX LITIGATION (THIRD) 24.122 (1995).

---

most awards around 5-20%). *Viscainzo v. Microsoft Corp.*, (9th Cir. 2002.) 290 F. 3d 1043, 1050.

## A. Lead Counsel's Fee Request Lacks Support as they Have Failed to Provide Billing Records.

In order to ascertain whether a requested fee is fair, reasonable, and adequate, the Second Circuit has stated its preference for moderation on a number of occasions. (See *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany* (2d. Cir. 2007) 484 F.3d 162; with the Honorable Sandra Day O'Connor sitting by designation; Superseded by *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany* (2d Cir. 2008) 522 F.3d 182.) Likewise, the *Goldberger* court affirmed, seven years prior, this Circuit's view that a fee request is proper only "if made with moderation." *Goldberger v. Integrated Resources, Inc.* (2d. Cir. 2000) 209 F.3d 43, 52. In *Arbor Hill*, the Court stated that a "reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill* at 169. The Court further stated that the "district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." Id. At 164.

In order to ascertain whether a fee request is what a reasonable, paying client would pay, the Court must necessarily inquire as to the source, quantity, and details of the hours specifically billed by Class Counsel. It is important to know whether two or 10 attorneys attended a deposition, whether it was a partner or contract attorneys that spent countless hours reviewing documents, by whom the bulk of the motion writing was done. All of these inquiries are simply a means to ensure that the Class, who is paying Class Counsel out of their recovery, is being appropriately charged for the efforts expended on their behalf. Unfortunately, based on a review of the materials available to it, this Objector was unable to ascertain how the 4,814.88 attorney hours were spent as Class

9

Counsel has submitted only billing summaries, instead of the bills themselves, for this Court's review. Therefore, there is absolutely no way to know whether the Class is being overcharged.

**B.    The Hourly Rate Requested Appears to be Unreasonable.**

In determining the lodestar amount, a reasonable hourly rate is applied to the number of hours reasonably incurred by the attorneys in their representation of the Class. *Goldberger*, 209 F.3d at 50.

In this instance, Class Counsel calculates its lodestar value by multiplying its total hours by their attorneys' **current hourly rates**, although this litigation has spanned a four-year period and, very likely, counsels' rates have changed over this time period. Notably, in *Goldberger*, the Court appointed special master, Michael D. Hess, to make an attorneys' fee determination for the benefit of the Court. Mr. Hess determined that it was improper for Class Counsel to seek to be compensated at its current market rate for a case that had spanned 3.5 years. He therefore reduced the lodestar calculation to determine a more reasonable hourly rate. *Goldberger*, 209 F.3d at 46. Likewise, seven years later, the *Arbor Hill* Court reiterated this Circuit's position that the district court must make a determination "***on setting a reasonable hourly rate***, taking account of all case-specific variables." *Arbor Hill*, 484 F.3d at 169 (emphasis added.)(" Our fee-setting jurisprudence has become needlessly confused-it has come untethered from the free market it is meant to approximate. We therefore suggest that the district court consider, in setting the reasonable hourly rate it uses to calculate the "lodestar," what a reasonable, paying client would be willing to pay." *Arbor Hill* 522 F.3d 184.)

In this case, Class Counsel are asking for fees ranging in the neighborhood of $700.00 for many of the Partners and nearly $400.00 per hour or more for the associates. While this might be considered a reasonable market rate today in the Southern District of New York, it is not clear that this was a reasonable market rate in 2007, at the time when certainly an appreciable number of hours were spent in advancing the Class's claims in this case. (See Doc, 71, 72, 73, Declarations of Ellen Gusikoff, Gregory M. Castaldo, and Gerald L. Rutledge, respectively.) This Objector thus respectfully requests that the Court consider this in its calculation of a reasonable hourly rate in this matter.

## VI. **OBJECTORS' ADDED VALUE TO THE CLASS.**

In their zeal to win approval of an agreement, professional class counsel and professional defense counsel often overlook or deny the importance of objectors to the class-action process. Indeed, professional class counsel and professional defense counsel may even denounce objectors' counsel as "serial objectors," or use some other pejorative epithet. However, settlements, such as this one, can be so complicated that only lawyers who have participated in many class action lawsuits can provide insightful and useful analysis, thoughtful alternatives, and a context within which to identify flaws or oversights in a settlement, and thereby assist a court in fulfilling its duty to examine the settlement as an independent and impartial neutral.

Thus, objectors provide great value to the class action process. Without resolving the issues described above, the Settlement could become a complete sham and no one would be the wiser. The judicial system would have failed Class Members by requiring no mechanism for assuring that the agreed relief is ever received by the persons who should benefit. The foregoing observations are submitted to improve the Settlement, and

thereafter to guarantee it will work, and to show when and how well it is completed. These improvements are developed only now because objectors offer the last opportunity to preserve the adversary process, which is necessary to test the fairness of a proposed settlement.

"It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally. . . . It is impossible for a class to select, retain or monitor its lawyers as an individual client would." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002). "Class counsel and defendants' counsel may reach a point where they are cooperating in an effort to consummate the settlement." Id. "Courts, too, are often inclined toward favoring the settlement, and the general atmosphere may become largely cooperative." Id.

"Thus, objectors serve as a highly useful vehicle for class members, for the court and for the public generally." *Great Neck*, 212 F.R.D. at 412. "From conflicting points of view come clearer thinking." *Id.* at 412-13. "Therefore, a lawyer for an objector who raises pertinent questions about the terms or effects, intended or unintended, of a proposed settlement renders an important service." *Id.* at 413.

Objectors' counsel have been recognized where their efforts have augmented the common fund or otherwise improved a class action settlement. See, e.g., *Bowling v. Pfizer, Inc.,* 922 F.Supp. 1261, 1285 (S.D. Ohio), aff'd, 102 F.3d 777 (6th Cir. 1996); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 257, 359-60 (N.D.Ga. 1993). Indeed, even in cases where objectors appeared but the settlement terms were not altered, courts have recognized their value in that their presence improved the process and

assisted the court in its scrutiny of the settlement. *See County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325-27 (2d Cir. 1990); *Howes v. Atkins*, 668 F.Supp. 1021, 1027 (E.D.Ky. 1987); *Frankenstein v. McCrory Corp.,* 425 F.Supp. 762, 767 (S.D.N.Y. 1977); *see also Domestic Air*, 148 F.R.D. at 359. Likewise, the Committee Notes to Rule 23(h) expressly states the benefit that objectors may bring to a case,

> "In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as attorneys who acted for the class before certification but were not appointed class counsel, or attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of class counsel. Other situations in which fee awards are authorized by law or by agreement of the parties may exist."
> 2003 Committee Note, Rule 23(h).

## VII. **JOINDER IN OTHER OBJECTIONS**

This Objector adopts and joins in all other well taken - bona fide objections filed by other Class Members in this case, and incorporates them by reference as if they appeared in full herein.

## VIII. **REQUEST FOR ATTORNEYS' FEES**

Based on the above, these Objectors wish to reserve the right to apply for reasonable and appropriate compensation for the valuable and crucially important services which have been provided in assisting the Court with this complex matter, preserving the adversary process needed to test the Proposed Settlement, identifying problems with the Proposed Settlement, and presenting substantial and workable solutions.

Accordingly, an incentive award is appropriate for Objectors herein for its willingness to be a named party, promoting fairness, and contributing to the common welfare of the Class.

13

## IX. CONCLUSION

**WHEREFORE**, This Objector respectfully requests that this Court:

1. Upon proper hearing, sustain these Objections;

2. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement;

3. Continue the Fairness Hearing until such time that this Objector has had an opportunity to review Class Counsel's Billing Records; and

4. Award an incentive fee to this Objector for its service as a named representative of Class Members in this litigation.

Respectfully submitted,

Dated: March 3, 2011  By: ＿＿/s/ Forrest S. Turkish＿＿＿＿＿
　　　　Forrest S. Turkish
Forrest S. Turkish
Law Offices of Forrest S. Turkish
595 Broadway
Bayonne, NJ 07002
Phone: 201-339-8866
Fax: 201-339-8456
Email: fsturkish@aol.com

Attorney for Objector Orloff

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2011, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Southern District of New York by using the USDC CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the USDC CM/ECF system, to wit:

Samuel H. Rudman
David A. Rosenfeld
Robbins Geller Rudman & Dowd LLP
Email: srudman@rgrdlaw.com
Email: drosenfeld@rgrdlaw.com

Gregory M. Castaldo
Christopher L. Nelson
Jennifer L. Enck
Barroway Topza Kessler Meltzer & Check, LLP
Email: gcastaldo@btkmc.com
Email: cnelson@btkmc.com
Email: jenck@btkmc.com

Mitchell A. Lowenthal
Joon H. Kim
Cleary Gottlieb Steen & Hamilton LLP
Email: mlowenthal@cgsh.com
Email: jkim@cgsh.com

    /s/ Forrest S. Turkish
Forrest S. Turkish
Attorney for Objector